IN THE MATTER OF LOUIS P. KAUFMAN, AN
ATTORNEY AT LAW.

Argued October 20, 1986—Decided November 24, 1986.

*Richard J. Engelhardt,* Deputy Ethics Counsel, argued the cause for Office of Attorney Ethics.

*Barry A. Kozyra* argued the cause for respondent (*Walder, Sondak, Berkeley & Brogan,* attorneys).

PER CURIAM.

The Office of Attorney Ethics (OAE) commenced this disciplinary proceeding by filing a motion before the Disciplinary Review Board (DRB), seeking final discipline of respondent, Louis P. Kaufman, pursuant to Rule 1:20–6. The motion was based on respondent's guilty pleas to separate indictments charging possession of methaquaalude in the one instance and of cocaine in the other. The Rule makes the criminal convictions conclusive evidence of the commission of the crimes, *R.* 1:20–6(b)(1), and the sole issue before the DRB and this Court is the extent of final discipline to be imposed. *R.* 1:20–6(b)(2)(ii).

The DRB recommended that respondent be suspended from the practice of law for six months. One member recommended a one-year suspension. Our independent review of the record leads us to accept the recommendation of the majority of the DRB.

I

Respondent was arrested in Passaic at about 3:00 a.m. on June 1, 1984. Local police observed respondent's vehicle back out of a parking space at a high rate of speed and crash into a cement flower box. Subsequent investigation disclosed that respondent was in possession of eight and one-half methaquaalude tablets. The incident resulted in respondent's guilty plea, in March 1985, to an indictment charging him with possession

of a controlled dangerous substance contrary to *N.J.S.A.* 24:21–20.

Four months after the Passaic incident, on October 3, 1984, respondent was arrested as a result of an undercover operation that led to the discovery of cocaine in respondent's apartment. In May 1985 he pleaded guilty to a Bergen County indictment charging possession of cocaine, in violation of *N.J.S.A.* 24:21–20(a)(1).

Respondent was sentenced on the Bergen County charge on June 14, 1985, to a two-year term of probation and fined $750, with the additional provision that he continue psychotherapy and submit to urine testing. Five days later, on June 19, 1985, he was sentenced on the methaquaalude possession charge to two-years probation and an additional $750 fine.

## II

In resisting the DRB's recommendation of a six-months suspension respondent argues that the recommendation fails to recognize that he was "a victim of the disease of drug dependency during a time of severe personal and financial problems." He points as well to his "self-initiated rehabilitative efforts to eliminate his dependency" and to the undisputed fact that he had voluntarily removed himself from the active practice of law during the period of his dependency. Kaufman emphasizes that his convictions did not grow out of the practice of law, nor was any client affected by his actions. Finally, respondent asks that we weigh in the balance his "otherwise excellent public and professional reputation both before and since his drug dependency," the punishment already imposed by the courts, and the "public ignominy created by newspaper publicity."

We recognize and accept the fact that respondent was indeed beset by both personal and financial problems. He was denied visitation with and custody of his three children for more than three months during 1983, and his income and profit from various real estate investments with his father-in-law were cut

off entirely and channelled to his ex-wife. His disagreements with his then wife and father-in-law were so severe that, according to him, the end result was stress, anxiety, and a depression so deep that he resorted to the use of drugs. When he recognized that his personal problems were interfering with the practice of law, he resigned his position as an associate in a law firm rather, he says, than risk injuring a client.

Respondent's psychotherapist, from whom he sought treatment for "his problem involving the use of cocaine and marijuana," was first seen on July 10, 1984, about a month after respondent's arrests on the methaquaalude charge. The physician characterized the "reasons behind [Kaufman's] problems with marijuana and cocaine" as "complicated," pointing out that although "part of the problem goes back to his early years[,] * * * one important aspect of his drug use had to do with extreme situational pressures which were created by his pending divorce, concerns regarding visitation with his children and financial worries."

Piecing together the psychotherapist's report with the presentence reports related to the drug convictions, which respondent made part of the record in these disciplinary proceedings, we learn that respondent had a history of marijuana, cocaine, and quaalude abuse. Specifically, he told the probation authorities of his "long-time" use of marijuana, "during college years, in the late 70's, and again in the early 1980's." The presentence report continues:

> While he allegedly experimented with cocaine during his college years, he was not a regular user until approximately 1981. He initially began use by sharing 1 gram of cocaine with a friend, over a one month period. He slowly increased his own personal consumption to approximately 1 gram per month, street value equivalent of $100.00 per month. Throughout the term of his cocaine abuse, he inhaled the substance, never mainlined. During the last year or so of his cocaine abuse he used quaaludes in conjunction with the cocaine, but not on a regular basis.
>
> The defendant denied ever having used or experimented with heroin or LSD. He did affirm the social consumption of intoxicating liquors, but described this as limited to "a couple of beers socially or wine with dinner." The defendant did deny ever having detoxified, or ever having participated in any narcotic

drug rehabilitation program. As noted under the Defendant's Health caption, contained in this report, he is presently undergoing psychotherapy on a bi-weekly basis, by way of treatment of the causes underlining his drug abuse.

Moreover, the presentence report establishes that the drug convictions that underlie these ethics proceedings were not Kaufman's first brush with the law. In December 1969 respondent was charged with possession of drugs, a sixth-degree offense under New York law, for which he received an "unsupervised conditional discharge" from the Mineola, New York, Municipal Court.

Given the circumstances recited above, we are entitled to view with some skepticism respondent's claim that the "abberational conduct * * * now at issue" was caused by the "severe pressures" of his chaotic personal and financial circumstances. More troubling, however, is the fact that respondent's unlawful behavior does not stand in the isolation of a single offense.. We are not dealing with but one conviction, which might otherwise arguably be viewed as an extraordinary aberration in an otherwise unremarkable record, but rather with two incidents of drug-related criminal conduct within about four months. At the time of the cocaine arrest in October 1984, respondent was awaiting indictment for possession of methaquaalude in June 1984. If the fact of two drug offenses within four months does not demonstrate a callous disregard of a lawyer's obligation to conduct himself or herself within the confines of the law, it surely represents a casual approach to that obligation. It is that fact—two offenses in four months—that most strongly influences our conclusion that a period of suspension is warranted.

### III

■■ One of our paramount concerns in the administration of attorney discipline is the maintenance of public confidence in the integrity of the bar. Every lawyer is an officer of the court and, in that sense, a minister of justice. A conviction of criminal possession of a controlled dangerous substance evi-

dences a public judgment that places in question the lawyer's integrity and respect for law. In the case of a criminal conviction we consider the nature and severity of the offense that lies at the root of the disciplinary charges, and whether—as is here *not* the case—the crime is related to the practice of law. *In re Litwin*, 104 *N.J.* 362, 365 (1968). Moreover, we examine respondent's good reputation, prior trustworthy professional conduct, and general good character, all either unchallenged or affirmatively supported by adequate evidence in these proceedings.

■ Balancing those various considerations in this case, we conclude that the circumstances call for more than mere censure. A six-months suspension from the practice of law represents the appropriate discipline.

In addition, respondent is to reimburse the Ethics Financial Committee for costs, including but not limited to the cost of producing transcripts.

So ordered.

### ORDER

It is ORDERED that LOUIS P. KAUFMAN of LITTLE FALLS, who was admitted to the bar of this State in 1975, be suspended from the practice of law for a period of six months, effective December 15, 1986, and until the further order of this Court; and it is further

ORDERED that LOUIS P. KAUFMAN reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that LOUIS P. KAUFMAN be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that LOUIS P. KAUFMAN comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended attorneys.

*For suspension*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.