584 A.2d 186

IN THE MATTER OF MICHAEL J. NEDICK, AN
ATTORNEY AT LAW.

January 10, 1991.

## ORDER

MICHAEL J. NEDICK, of EDGEWATER, who was admitted to the Bar of this State in 1975, having pleaded guilty to Federal income tax evasion, in violation of 26 *U.S.C.A.* § 7201, and having been suspended by Order of this Court on April 19, 1990 for said conviction, pursuant to *Rule* 1:20–6(b)(1);

And the Disciplinary Review Board having filed a report with the Supreme Court recommending that respondent be suspended from the practice of law for a period of two years for his conviction of Federal income tax evasion;

And respondent having been ordered to show cause why he should not be disbarred or otherwise disciplined pursuant to *Rule* 1:20–5(a); and good cause appearing;

It is ORDERED that the report of the Disciplinary Review Board is hereby adopted and MICHAEL J. NEDICK is suspended from the practice of law for a period of two years and until further order of the Court, effective April 19, 1990; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of respondent as an attorney at law of the State of New Jersey; and it is further

ORDERED that respondent continue to be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent continue to comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with suspended attorneys; and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.

### Appendix

This matter is before the Board on a Motion for Final Discipline based upon a criminal conviction, filed by the Office of Attorney Ethics ("OAE"), pursuant to *R.* 1:20–6(c)(2)(i). The motion is based on respondent's guilty plea to a one-count felony information charging him with income tax evasion for the calendar year 1983, in violation of 26 *U.S.C.A.* § 7201.

Respondent has been a member of the New Jersey bar since 1975. He is also admitted to practice in the State of New York. He is forty-one years old, married, and has an eighteen-month old son. Upon graduating from law school in 1973, respondent began employment with the Legal Aid Society of New York City, in the Criminal Defense Division. He worked as a defense

attorney representing indigent criminal defendants until December 1981.

Upon leaving the Legal Aid Society, respondent formed a law partnership with another attorney, Mark Weinstein. Six months later, they were joined by a third attorney, William T. Martin. After Weinstein left the partnership in 1985, respondent and Martin continued as law partners until December 1987.

Sometime during 1986–1987, Martin became the subject of an investigation by the United States Attorney's Office, after giving false testimony before a grand jury concerning a heroin dealer whom his law firm represented in the early 1980s. In 1987, Martin was elected to a fourteen-year term as a Justice of the New York Supreme Court for Bronx County. As part of its investigation, the United States Attorney's Office reviewed the individual and partnership tax returns filed by respondent, Weinstein and Martin. The income reported on the partnership returns was suspiciously low.

On February 9, 1989, respondent entered into a cooperation agreement with the government and pleaded guilty to one count of tax evasion for failing to include $7,500 in cash legal fees in his taxable income of $13,000 for 1983. As a direct result of this agreement, the government was able to obtain guilty pleas to felony charges from both Weinstein and Martin, including tax evasion, conspiracy, perjury, fraud, and narcotics violations.

On April 4, 1990, respondent was sentenced to two years' imprisonment, with all but three months of the sentence suspended, to be followed by nine months' probation, subject to the special condition that respondent submit to drug testing.[1] The

---

[1]The *only* reference to drug-related problems appears in the transcript of the sentencing proceedings, where the court noted that "[u]nfortunately, in the course of representing criminal defendants, the partners picked up some habits

sentencing court recommended that the custodial part of the sentence be served in a halfway house, to enable respondent to continue working.

On April 19, 1990, respondent was temporarily suspended from the practice of law, pursuant to *R.* 1:20–6(b)(1). The suspension remains in effect as of this date.

The OAE is seeking respondent's disbarment.

## CONCLUSION AND RECOMMENDATION

A criminal conviction is conclusive evidence of guilt in disciplinary proceedings. Once an attorney is convicted of a crime, the sole question remaining is the measure of discipline to be imposed. *In re Rosen,* 88 *N.J.* 1, 3, 438 *A.*2d 316 (1981); *Matter of Kaufman,* 104 *N.J.* 509, 510, 518 *A.*2d 185 (1986). The goal is to protect the interests of the public and the bar while giving due consideration to the interests of the individual involved. *In re Mischlich,* 60 *N.J.* 590, 593, 292 *A.*2d 23 (1972). In determining the proper discipline to be imposed, many factors have to be considered, including the nature and severity of the crime and whether the crime was related to the practice of law. Evidence that does not dispute the crime but that shows mitigating circumstances is also considered, such as the attorney's good reputation, prior trustworthy professional conduct, and general good character. *In re Infinito,* 94 *N.J.* 50, 57, 462 *A.*2d 160 (1983).

There is no hard and fast rule that requires a certain penalty to be imposed upon conviction of a certain crime. Every disciplinary matter is factually different and judged on its own merits. *In re Infinito, supra,* 94 *N.J.* at 57, 462 *A.*2d 160.

There is no doubt that respondent's conduct was unethical. He violated *DR* 1–102(A)(3), by engaging in illegal conduct that

---

that were, to say the least, not exemplary. The probation report recounts the use of cocaine …" (transcript of sentencing proceedings 17–18).

adversely reflects on his fitness to practice law, and *DR* 1–102(A)(4), by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Significant mitigating factors, however, deserve consideration: (1) respondent's criminal act, albeit serious, did not directly involve client representation; (2) prior to this unfortunate occurrence, he enjoyed an unblemished ethical record; (3) he is respected by his colleagues and highly regarded by his friends and family members, as attested by the numerous letters contained in the record; (4) beginning in 1985 and until 1989, when respondent entered his guilty plea, he participated in numerous civic and political activities, including membership in the Planning Board for the Borough of Edgewater, his election as a Democratic County Committeeman for the Third District of Edgewater, and a one-year term on the Edgewater Borough Council, to name a few; (5) six years have passed since the ethical infraction was committed; (6) respondent readily acknowledged the seriousness of the offense and accepted full responsibility therefor; (7) he agreed to make complete restitution to the government; and (8) he provided invaluable assistance to the government in its investigation against Weinstein and Martin.

As to the latter consideration, the record shows that, without respondent's cooperation, it might have been difficult to obtain Weinstein's and Martin's guilty pleas. As acknowledged by Steven A. Standiford, an Assistant United States Attorney,

> [Respondent] provided important, specific information and documentary evidence that the Government could not have obtained from any other source. For example, without disclosing privileged information, [respondent] provided the Government with copies of his law firm's financial records which disclosed cash fees received by the firm. [Respondent] also described in detail the specific cases that each of the partners handled and provided nonprivileged portions of client files to the Government. This enabled the Government to locate and interview numerous former clients who corroborated the cash fees paid by the firm. This task of identifying and locating former clients would have been nearly impossible without [respondent's] assistance.
>
> . . . . . . . .
>
> During the fall of 1989, when it appeared that Martin would elect to stand trial, [respondent] spent countless hours at the United States Attorneys Office

preparing his trial testimony. When Martin pleaded guilty but elected to have a *Fatico* hearing, [respondent] spent additional time preparing and giving his testimony before Judge Edelstein in January [1990]. Based on the testimony of [respondent] and the other witnesses, Martin was sentenced to nine months in prison and is presently serving his sentence.

[Exhibit E to OAE's brief in support of motion for final discipline.]

The Board now turns to the task of recommending the imposition of discipline that is commensurate with the extent of the misconduct, giving due consideration to the foregoing mitigating circumstances.

In its brief and at the Board hearing, the OAE urged respondent's disbarment. Although the OAE conceded that the typical discipline imposed for tax evasion has been a two-year suspension, it noted that, in recent years, the Court "has displayed an increasing tendency towards the imposition of stricter discipline ... particularly so when dealing with the commission of serious crimes." (OAE's brief at 4). It equated respondent's conduct with the conduct exhibited by the attorneys in *Matter of Lunetta*, 118 *N.J.* 443, 572 *A.*2d 586 (1989), and *Matter of Mallon*, 118 *N.J.* 663, 573 *A.*2d 921 (1990), finding them indistinguishable (BT3).[2] In both cases, the attorneys were disbarred.

In *Lunetta*, the attorney pleaded guilty to a federal information charging him with knowingly and willfully conspiring to receive and dispose of $200,000 worth of stolen bonds. In that case, the attorney used his trust account to distribute the proceeds of sale of the stolen securities to himself and his accomplices. The conspiracy realized $170,000, of which respondent received $20,000 to $25,000 for his role in the scheme.

In *Mallon*, the attorney was convicted of three counts: conspiracy to defraud the United States, aiding and abetting the submission of false tax returns and obstruction of justice. The matter arose out of the attorney's participation in a conspiracy

[2]BT denotes the transcript of the Board hearing on July 25, 1990.

to hide illegal income from federal tax authorities. In effect, the attorney participated in the "laundering" of funds in order to fabricate two transactions reported on the joint tax returns of a married couple. Those transactions concerned capital gains claims of a combined amount of $541,000.

The Board disagrees with the OAE's contention that respondent's conduct—failure to report $7,500 in cash legal fees earned in one calendar year—parallels the conduct of the attorneys in *Lunetta* and *Mallon*. They are distinguishable both as to the nature and severity of the crimes.

This case is more analogous to *In re Becker,* 69 *N.J.* 118, 351 *A.*2d 346 (1976), where the attorney was indicted for tax evasion in three consecutive years, but pleaded guilty to one count of the indictment. The attorney received a two-year suspension.

Similarly, in *In re Gurnik,* 45 *N.J.* 115, 211 *A.*2d 777 (1965), the attorney was suspended for a period of two years after he pleaded *nolo contendere* to a charge of tax evasion in one calendar year. In another case, a conviction of knowing and willful attempt to evade income tax returns also merited a two-year suspension from the practice of law. *In re Tuman,* 74 *N.J.* 143, 376 *A.*2d 1209 (1977).

The OAE argued that, in this case, aggravating factors abound because respondent's criminal conduct comprised a series of acts, commencing in 1982 with respondent's and his partners' agreement not to report cash fees, and continuing until at least 1986. More specifically, the OAE urged the Board to consider that respondent and his partners agreed not to report $10,000 to $15,000 in cash fees in 1982, $30,000 to $40,000 in 1983, $40,000 in 1985, and $10,000 in 1986. To support its argument, the OAE relied not on the plea agreement, but presumably on a letter by Assistant United States' Attorney Steven A. Sandiford to the sentencing court, in which mention is made to those specific charges. (Exhibit E to OAE's

brief). The purpose of that letter was to urge the sentencing court to use leniency in imparting respondent's sentence, in view of his extensive cooperation with the government.

The Board is aware that, in motions for final discipline, the independent examination and evaluation of the entire record required of the Board is limited to facts underlying a criminal conviction or guilty plea. It cannot and does not include consideration of unproven allegations. *Matter of Friedman,* 106 *N.J.* 1, 10, 523 *A.*2d 1071 (1987). The Board is also aware that its review is not limited to the four corners of the plea of guilty in recommending the appropriate discipline to be imposed. All relevant documents that will assist in creating the "full picture" are considered. These include the pre-sentence report, the plea agreement, and the sentencing court's record. *Matter of Spina,* 121 *N.J.* 378, 580 *A.*2d 262 (1990).

True to the principles above, the Board considered the entire record before it, including the admissions contained in respondent's brief that respondent's conduct consisted of a series of acts from 1982 through 1986. The Board is not convinced, however, that respondent's misconduct is deserving of disbarment.

This is not to say that the Board condones or regards respondent's misdeed as insignificant. What he did was wrong and he has paid dearly for his mistake. In the Board's view, however, disbarment is too severe a measure of discipline for respondent's misconduct.

After a careful balancing of the nature of the crime with the mitigating factors enumerated above, the Board unanimously recommends that respondent be suspended for a period of two years. One member did not participate.

The Board further recommends that respondent be required to reimburse the Ethics Financial Committee for administrative costs.