560 N.W.2d 123 (1997)
251 Neb. 815
STATE of Nebraska ex rel. Nebraska State Bar Association, Relator,
v.
Fred H. BROWN, Respondent.
No. S-94-156.
Supreme Court of Nebraska.
February 28, 1997.
*125 John W. Steele, Assistant Counsel for Discipline, for relator.
Fred H. Brown, pro se.
WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and SPRAGUE, District Judge.
PER CURIAM.
This is a lawyer discipline case wherein the relator, Nebraska State Bar Association, seeks to have this court discipline the respondent, Fred H. Brown, a member of the relator association.

*126 SCOPE OF REVIEW
A proceeding to discipline a lawyer is a trial de novo on the record, in which this court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, this court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. State ex rel. NSBA v. Johnston, 251 Neb. 468, 558 N.W.2d 53 (1997).

FACTS
Brown was duly admitted by this court to the practice of law in the State of Nebraska and to membership in the association on October 28, 1982. On February 19, 1993, he was indicted in the U.S. District Court for the District of Nebraska for the felonies of possessing with the intent to distribute cocaine and of conspiring to distribute cocaine, all in violation of federal law, and with using or intending to use a vehicle to commit or facilitate the same. On February 4, 1994, Brown was convicted of the offenses charged in the indictment, and on February 11, we suspended him from the practice of law.
On July 25, 1994, Brown was sentenced to pay a $10,000 fine, to imprisonment for a term of 15 months, and to supervision upon release from imprisonment for a term of 3 years. In addition, his interest in the vehicle mentioned earlier was forfeited to the U.S. Government. His convictions were affirmed by the U.S. Court of Appeals for the Eighth Circuit in U.S. v. Fregoso, 60 F.3d 1314 (8th Cir.1995). No further appeal was taken.
Brown has served 7 months of the 15-month prison sentence, from August 1994 to March 1995, and remains under supervised release until March 1998. While on supervised release, Brown must comply with the following pertinent conditions:
refrain from excessive use of alcohol and... not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
. . . .
. . . submit to such testing as may be requested by any person involved in monitoring [Brown's] supervision to detect the presence of alcohol or controlled substances in [his] body fluid and to determine whether [he] has reverted to the use of any prohibited substances.
. . . .
. . . participate in a program as directed and approved by the U.S. Probation Office for treatment of narcotic addiction, drug or alcohol dependency which will include testing for detection of substance abuse.
On February 28, 1996, the association filed formal charges against Brown, alleging, among other things, that his conduct violated Canon 1, DR 1-102(A)(1), (3), and (6), of the Code of Professional Responsibility, which provides that a lawyer shall not "(1) Violate a Disciplinary Rule.... (3) Engage in illegal conduct involving moral turpitude.... (6) Engage in any other conduct that adversely reflects on his or her fitness to practice law."
Brown filed an answer admitting that he had been convicted of the charged felonies and that the convictions had been affirmed, but denied that his conduct constituted a violation of the code.
The relevant evidence at the federal trial, as summarized by the U.S. Court of Appeals in Fregoso, supra, is that Brown facilitated Dixie Buck's cocaine enterprise. Buck began distributing cocaine in approximately February 1992 and testified that on one occasion when she ran out of cocaine, she called Brown and informed him of her situation. Brown told her to go to a local bar and he would meet her there and possibly be able to help her. She subsequently met Brown and Steve Cymbalista at the bar. Brown and Cymbalista set up a "buy" for her with one of the bar's patrons. Buck gave Brown $250, and Brown in turn gave the money to Cymbalista, who went to the men's room in the bar, bought one-eighth of an ounce of cocaine from the patron, and delivered it to Buck. Further, on several occasions, Brown acted as an informal "debt collector" for Buck by persuading Cymbalista and Mary Cox to pay sums they owed Buck for cocaine. For instance, Buck testified that she sometimes "fronted" cocaine to Cymbalista. When *127 Cymbalista would not pay her for the quantities, she testified that she called Brown, who persuaded Cymbalista to pay her. Brown frequently drove Cox and Cymbalista to Buck's house, where they would purchase cocaine, albeit for their own personal use. Brown was present at Buck's house when various drug transactions and drug use were taking place, frequently joining the activities himself, and he clearly knew the nature of business that was taking place there. Moreover, Buck testified that Brown was aware that she was getting some of her cocaine from others. Brown used Cox or Cymbalista to pick up cocaine from Buck and bring it back to him, after which they would share the drugs. Brown instructed Cox to carry the cocaine in her mouth and swallow it if she was stopped by the police. Brown also acquired cocaine from Buck by himself and shared it with Cox and Cymbalista. Cox witnessed Cymbalista purchase cocaine from Brown on numerous occasions. There was also evidence that Brown (who was representing Buck on her workers' compensation claim) personally delivered Buck's monthly workers' compensation checks to her without charging or deducting any attorney fee (thus indirectly financing her drug distribution business), and when Buck was arrested in Missouri on an unrelated drug charge, Brown provided the bail money. The circuit court concluded that the evidence shows that Brown was no passive purchaser but, instead, played a larger role than merely buying drugs from Buck for his own personal consumption.
The referee appointed by this court conducted a hearing, at which Brown and two lawyers who had practiced law with him testified. The pertinent portions of Brown's testimony are set forth later in this opinion. Attorney James H. Moylan expressed his opinion that Brown always did an excellent job representing clients. Having seen, observed, and talked with Brown since his convictions, Moylan recommended that Brown be reinstated to practice law and offered to supervise Brown's work if he were readmitted.
Attorney John P. Steichen testified that he had been acquainted with Brown since 1987. Brown had always been considered an excellent lawyer, and Steichen could not recall any of Brown's previous clients ever expressing any dissatisfaction with Brown's representation. Steichen was confident that Brown would still be able to practice law and stated that he, too, would be willing to supervise Brown's work.
The referee found, among other things, that Brown neither acknowledges the nature of his convictions nor shows remorse for his actions, asserting that he was convicted for using and being addicted to cocaine; that the evidence did not support Brown's claim that his drug use and convictions arose from personal problems, including divorce; that as Brown did no more than he was required to do after being suspended, his actions in that regard do not mitigate any discipline to be imposed; and that while the evidence demonstrated that Brown has undergone inpatient and outpatient counseling and treatment for chemical dependency, he did not voluntarily enter treatment until some 5 months after he was indicted and has suffered a relapse, having used cocaine in February 1994. The referee concluded that Brown had violated the code as charged by the association and recommended disbarment.
Brown takes exception to the foregoing findings and to the recommended disciplinary sanction, urging that the referee did not properly consider and evaluate the mitigating circumstances.

ANALYSIS
In order to sustain a complaint in a lawyer discipline proceeding, we must find the complaint to be established by clear and convincing evidence. State ex rel. NSBA v. Johnston, 251 Neb. 468, 558 N.W.2d 53 (1997).

FACTUAL FINDINGS
On de novo review, we independently find that the evidence clearly and convincingly establishes that Brown indeed neither acknowledges the nature of his convictions nor shows remorse for his actions. Notwithstanding the evidence at the federal trial, Brown continues to maintain that "there was never any cocaine found in my possession, *128 and I readily admitted the use of it, didn't deny it. I think the facts leading up to the conspiracy to distribute were kind of suspect."
We also find that the evidence does not support a finding, even by a preponderance of the evidence, that Brown's cocaine use stemmed from personal problems, including divorce. All the record contains in that regard is Brown's testimony that
during that time and leading up through that andyou know, before and after the conviction, I'd gone through some personal problems, went through a divorce and which is kind of hard, and I thinkyou know, problems leading up through the divorce and even afterwards probably contributed to kind of going downhill and using drugs and things.
If ever personal problems may constitute mitigation for involvement in a drug enterprise, a matter we do not decide, this evidence falls far short of providing such a basis.
Neb.Ct.R. of Discipline 16 (rev. 1996) requires, among other things, that one suspended from the practice of law return to the Clerk of this court the card showing membership in the association and file an affidavit stating that all present clients and lawyers have been notified of the suspension and that clients have been assisted in obtaining representation. While the failure to comply with the rule places one in contempt of this court and certainly constitutes an aggravating circumstance, see Johnston, supra, it does not follow that compliance with the rule provides a mitigating circumstance; as the referee noted, doing what one is required to do is not a mitigating circumstance. In point of fact, it took Brown more than one try at complying with the rule because the first notices he sent to his clients were deficient in that they contained a recommendation that representation be provided by a particular substitute lawyer.
The evidence establishes that Brown began substance abuse counseling in July 1993, 5 months after he was indicted. Further, although Brown appears to be arguing that because he attends counseling voluntarily, it should be considered a sufficient mitigating factor, he fails to acknowledge that all of the treatment programs he has completed were mandated by the conditions of his supervised release, including the random urinalysis testing and chemical dependency treatment. It is of particular significance that when asked at the hearing before the referee how long it had been since he had used cocaine, Brown answered that he had stopped using cocaine after he was indicted up until the time he was convicted, but then "just kind of said, hell with it" and used cocaine in February 1994. Brown, however, swore under oath in his February 22, 1994, response to our order to show cause why he should not be temporarily suspended from the practice of law that "the last time he used cocaine was in March of 1993" and that because of such, "there exist[ed] no legitimate concern" that any harmful conduct was continuing or constituted a danger of continuing. This inconsistency is of grave concern, as it raises the question of whether Brown was lying under oath when he stated that he had not used cocaine since March 1993, or whether he in fact used cocaine within a couple of weeks of swearing to us that there was no longer a legitimate concern that he would engage in harmful conduct. As the referee noted, neither of the possibilities is reassuring.
The basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances. State ex rel. NSBA v. Gridley, 249 Neb. 804, 545 N.W.2d 737 (1996).
The conviction of a crime involving moral turpitude, as this crime does, whether a felony or misdemeanor, is conclusive evidence warranting disciplinary action. See State ex rel. Nebraska State Bar Assn. v. Tibbels, 167 Neb. 247, 92 N.W.2d 546 (1958). Accordingly, the evidence clearly and convincingly establishes that Brown violated DR 1-102(A)(1), (3), and (6), which warrants disciplinary action. The only question is what the disciplinary sanction should be.

DETERMINATION OF SANCTION
To determine whether and to what extent discipline should be imposed, it *129 is necessary that the following factors be considered: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. State ex rel. NSBA v. Johnston, 251 Neb. 468, 558 N.W.2d 53 (1997). Violation of a disciplinary rule concerning the practice of law is a ground for discipline. Gridley, supra.
In State ex rel. NSBA v. Matt, 213 Neb. 123, 327 N.W.2d 622 (1982), the respondent was charged with conspiracy to possess cocaine with intent to deliver. He was allowed to successfully complete a pretrial diversion program, after which the charges were dismissed. The association charged the respondent with violation of DR 1-102(A)(1) and (6). Evidence showed that as a result of the respondent's efforts, the cocaine buyer was able to illegally purchase a controlled substance, and the seller, also an acquaintance of the respondent's, was able to sell a controlled substance, and that the respondent knew that such would be the result of his efforts. The evidence also showed his conduct was motivated by his friendship with the buyer and seller, and he received no remuneration for his efforts. Finally, there was evidence that the respondent had purchased and occasionally used marijuana personally. We wrote that
such conduct adversely reflects upon respondent's fitness to practice law and constitutes a violation of the disciplinary rules as charged. There can be no doubt that aiding and abetting criminal dealings in controlled substances, whatever the motivation of an attorney may be, constitutes conduct involving moral turpitude and warrants disciplinary action.
Matt, 213 Neb. at 126, 327 N.W.2d at 623-24. Because the record reflected that the respondent had successfully completed pretrial diversion and was no longer involved with alcohol or drugs and that there were other mitigating circumstances, we concluded that he should be suspended from the practice of law for a period of 1 year.
In State ex rel. NSBA v. Egan, 246 Neb. 583, 520 N.W.2d 779 (1994), the respondent was convicted in the federal courts of conspiracy to distribute and possession with the intent to distribute methamphetamine, and with 25 related substantive crimes committed in furtherance of the conspiracy. See U.S. v. Lucht, 18 F.3d 541 (8th Cir.1994). He was sentenced to a term of incarceration of 15 years 8 months. The evidence at the drug trial showed that the respondent was a willing participant in the conspiracy, that he had distributed drugs, and that he advised his supplier about laundering money. The respondent voluntarily surrendered his license and admitted that he had been convicted and that such convictions violated Canon 1, DR 1-102 and his oath of office as a lawyer. After waiving his right to notice, appearance, and hearing, we accepted the surrender and ordered the respondent disbarred.
The respondent in State ex rel. NSBA v. Aguilar, 242 Neb. 274, 494 N.W.2d 346 (1993), had been suspended from the practice of law in Nebraska for failure to pay membership dues. Over a year after his suspension in Nebraska, the Florida Supreme Court disbarred him after finding that he had been the attorney for the leader of a large cocaine-smuggling operation, had conspired with other individuals to import large amounts of cocaine into the United States, had defrauded the United States by concealing the income gained through the drug trafficking, and had developed an elaborate system to "launder" the proceeds from the illegal transactions. In the proceedings for reciprocal discipline, we disbarred the respondent.
In State ex rel. NSBA v. Payne, 226 Neb. 727, 414 N.W.2d 283 (1987), another proceeding for reciprocal discipline, the Indiana Supreme Court held that possessing and using cocaine; purchasing and possessing marijuana, unspecified narcotics, and cocaine; failing to appear for a client at a hearing; and accepting cocaine as payment for legal services warranted disbarment. The respondent had also been disbarred in Colorado. We also disbarred the respondent from the practice of law in Nebraska.
*130 Brown calls to our attention a number of cases from other jurisdictions in which a variety of disciplinary sanctions other than disbarment were imposed. E.g., In re Leardo, 53 Cal.3d 1, 805 P.2d 948, 278 Cal.Rptr. 689 (1991) (lawyer convicted of two counts of possession of controlled substances with intent to distribute placed on conditional probation; became dependent on unavailable synthetic opiates resulting in his originally obtaining heroin for self-medication); Matter of Rivkind, 164 Ariz. 154, 791 P.2d 1037 (1990) (lawyer convicted of attempted possession of cocaine suspended 2 years and placed on probation 1 year; demonstrated contrition, rehabilitated self, and engaged in educating and assisting others); Matter of Kinnear, 105 N.J. 391, 522 A.2d 414 (1987) (lawyer shared or gave cocaine to undercover agent; pled guilty to distribution of cocaine, suspended 1 year; did not profit from single unlikely to recur act).
However, as we observed in the contexts of disciplining a judge, In re Complaint Against Kneifl, 217 Neb. 472, 351 N.W.2d 693 (1984), and of considering an applicant's fitness to be admitted to the practice of law, In re Application of Majorek, 244 Neb. 595, 508 N.W.2d 275 (1993), any effort to design the appropriate discipline by comparing this case to cases from other jurisdictions is of limited value. Although such an analysis might be instructive, the responsibility of defining and enforcing proper conduct for Nebraska lawyers falls upon this court.
In discharging that responsibility, we recognize that there can exist circumstances which mitigate the punishment which should otherwise be exacted. See, State ex rel. NSBA v. Bruckner, 249 Neb. 361, 543 N.W.2d 451 (1996); State ex rel. NSBA v. Gleason, 248 Neb. 1003, 540 N.W.2d 359 (1995); State ex rel. NSBA v. Matt, 213 Neb. 123, 327 N.W.2d 622 (1982).
While Brown urges that his drug involvement did not affect his clients, the reality is that his indictment made it necessary for his then clients to seek other counsel. Moreover, while Brown is to be commended for his efforts in pursuing rehabilitation, the fact is that he is compelled to do so by the terms of his supervised release from prison. In State ex rel. NSBA v. Woodard, 249 Neb. 40, 541 N.W.2d 53 (1995), a misappropriation case, we did not consider the 12-year abstention from alcohol abuse and the almost 6-year freedom from nonmedical prescription drug use to militate against disbarment. We find nothing which mitigates the punishment which should be imposed in this case.

CONCLUSION
Balancing Brown's interest in regaining his privilege to practice law against the nature of his offenses, the need to deter others from similar misconduct, the need to maintain the reputation of the bar as a whole, and the need to protect the public, we determine that Brown must be, and hereby is, disbarred, effective immediately.
JUDGMENT OF DISBARMENT.