STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE OF THE NEBRASKA SUPREME COURT, RELATOR, v. PAUL M. MUIA, RESPONDENT.

711 N.W.2d 850

Filed March 24, 2006.    Nos. S-04-1375, S-05-1115.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

D.C. Bradford and Justin D. Eichmann, of Bradford & Coenen, for respondent.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

PER CURIAM.

## INTRODUCTION

This opinion involves two separate attorney discipline proceedings filed against Paul M. Muia: cases Nos. S-04-1375 and S-05-1115. The cases have been consolidated for purposes of disposition. Muia was admitted to the practice of law in the State of Nebraska on September 14, 1990, and at all times relevant hereto was engaged in the private practice of law in Omaha, Nebraska.

In case No. S-04-1375, formal charges were filed on December 6, 2004, by the office of the Counsel for Discipline of the Nebraska Supreme Court. The formal charges set forth three counts alleging that Muia had violated the following provisions of the Code of Professional Responsibility: Canon 1, DR 1-102(A)(1), (4), (5), and (6) (violating disciplinary rule); Canon 2, DR 2-110(A)(2) (failing to notify clients upon withdrawal from employment); Canon 6, DR 6-101(A)(3) (neglecting legal matter); and Canon 9, DR 9-102(A)(1) and (2) (preserving identity of funds and property of client), and DR 9-102(B)(3) and (4) (maintaining records of funds and promptly paying funds to client). The Counsel for Discipline also claimed that Muia had violated his oath of office as an attorney. See Neb. Rev. Stat. § 7-104 (Reissue 1997). Muia's answer admitted some allegations and denied others.

After a hearing, the referee filed a report on July 13, 2005, in which he concluded that Muia's conduct had violated DR 1-102(A)(1), DR 2-110(A)(2), DR 6-101(A)(3), DR 9-102(B)(3) and (4), and his oath of office as an attorney. The referee found that the Counsel for Discipline had not proved a violation of DR 9-102(A)(1) and (2). The referee noted that Muia's license had been suspended for 4 months beginning November 7, 2003, for an earlier violation of the disciplinary rules, see *State ex rel. Counsel for Dis. v. Muia*, 266 Neb. 970,

670 N.W.2d 635 (2003), and that Muia had not sought reinstatement of his license between March 8, 2004, and the time of the hearing before the referee on June 21, 2005. In recognition of these facts, the referee recommended that Muia receive a term of suspension from the practice of law beginning March 8, 2004, and extending through the date of the filing of this court's opinion in the current proceedings, with no additional period of suspension.

In No. S-05-1115, formal charges were filed on September 19, 2005, by the Counsel for Discipline. Amended formal charges were filed on December 27, alleging that Muia had violated the following provisions of the Code of Professional Responsibility: DR 1-102(A)(1), (5), and (6) (violating disciplinary rule), and Canon 5, DR 5-104(A) (entering into business transaction with client if attorney and client have differing interests). Muia consented to the motion for leave to file amended formal charges, and his answer admitted some allegations and denied others.

After a hearing, the referee filed a report finding that Muia had violated DR 1-102(A)(1), (5), and (6); DR 5-104(A); Neb. Ct. R. of Discipline 9(E) (rev. 2001); and his oath of office. The referee recommended that Muia be suspended from the practice of law from March 8, 2004, to the date of the filing of this court's opinion and that Muia be placed on probation and monitored by another licensed Nebraska attorney for not less than 2 years following his reinstatement. We impose discipline as indicated below.

## FORMAL CHARGES

### No. S-04-1375—Count I

The first count concerned Muia's representation of Steven P. Reed, who retained Muia on January 8, 2002, to represent him on a contingency fee basis in a personal injury case arising from an automobile collision. Muia settled Reed's case against the negligent party for that party's insurance policy limits of $25,000. When Muia received this amount on or about May 23, 2003, he deposited it into his trust account. Muia retained his attorney fee, as well as $10,897.88 to pay Reed's medical creditors. The remainder was paid to Reed. Between May 23 and

September 23, Muia worked to settle Reed's claim for underinsured motorist coverage against the insurance carrier for the car in which Reed was a passenger at the time of his accident. The claim was ultimately settled, and the proceeds were divided between Reed and Muia pursuant to their fee agreement.

After the insurance claim was settled, Muia negotiated settlement of a bill with an Omaha hospital on September 24, 2003. The $6,783.88 bill was settled for 90 percent, with Muia keeping the 10-percent savings as additional compensation pursuant to his agreement with Reed. Muia wrote a check to himself that day for $678.38. Payment was not made to the hospital at that time because Muia was planning to negotiate another bill with a different division of the hospital. When Muia settled the first claim with the hospital, six additional medical creditors had claims against Reed totaling $3,787.

On November 7, 2003, Muia's license to practice law was suspended. He then held $6,105.50 in his trust account to pay the hospital for Reed and $3,787 to pay Reed's other medical creditors.

Pursuant to Neb. Ct. R. of Discipline 16 (rev. 2001), Muia notified Reed that Muia's license had been suspended. However, Muia did not inform Reed that some of Reed's funds remained in Muia's trust account. Muia did not inform Reed that the medical creditors had not been paid; nor did Muia deliver Reed's funds to him. Muia did not make any payments on Reed's behalf between November 7, 2003, and June 7, 2004, due to Muia's belief that he could not make such payments while under suspension from the practice of law. Muia sent payment to Reed's medical creditors for the prior balances on June 7.

## No. S-04-1375—COUNT II

At the time Muia was suspended on November 7, 2003, the balance of his trust account was $29,168.11. The funds represented personal injury settlements for 15 clients in addition to Reed and were to be used to negotiate with and pay the clients' medical creditors. Muia notified only 1 of these 15 clients that his license had been suspended. He did not inform any of the 15 clients that their funds remained in his trust account or that the medical creditors had not been paid; nor did he deliver the funds

to the clients. Due to Muia's belief that he could not make any payments to the medical creditors while under suspension, he did not make any payments between November 7, 2003, and June 7, 2004. On June 7, Muia sent payment to the medical creditors of the 15 clients for their respective prior balances. None of the 15 clients made a complaint against Muia with the Counsel for Discipline or indicated that they suffered any harm.

### No. S-04-1375—COUNT III

On September 24, 2003, Christine Sutherland hired Muia to represent her in a child support collection matter. On November 18, 11 days after Muia's license to practice law was suspended, he contacted Sutherland to inform her that his license had been suspended. Although Sutherland was scheduled to appear in court in Washington County, Nebraska, on December 2, Muia did not inform her as to who would represent her in his place. Sutherland contacted the clerk of the court on the date of the scheduled hearing and was told that the case had not been settled.

Muia had apparently asked Maria Vera to represent Sutherland. On December 2, 2003, Vera contacted the opposing attorney in Sutherland's case to inform him that she was taking over Sutherland's representation, and the two attorneys agreed to continue the December 2 hearing.

On December 5, 2003, Sutherland filed a grievance against Muia with the Counsel for Discipline. Sutherland did not learn that Muia had turned over her file to Vera until around December 12, when she received a letter from Muia that was dated November 11, 2003, but not postmarked until December 10. Vera returned Sutherland's file to Muia in December 2003, but Muia did not deliver the file to Sutherland until November 23, 2004.

### No. S-05-1115

In this case, the formal charges alleged that Muia had violated the disciplinary rules in relation to a client, Dr. Charles Muiu. Muia represented Dr. Muiu on a variety of legal matters between 2001 and November 7, 2003.

On June 21, 2003, Muia borrowed $5,000 from Dr. Muiu for a business venture. Muia allegedly failed to provide full disclosure

and failed to advise Dr. Muiu to seek independent counsel before entering into the business relationship. Muia did not provide a written promissory note for the loan, and he failed and refused to pay off the loan. Dr. Muiu filed a grievance against Muia with the Counsel for Discipline on February 16, 2005, but Muia failed to file a timely response.

After a hearing, the referee filed a report in which he summarized the evidence. The primary issue in contention was whether Dr. Muiu expected to be repaid the $5,000 loan, as alleged by Dr. Muiu, or whether it represented an investment in Muia's business, as claimed by Muia. No written documentation proved either assertion. The referee noted that the money was ultimately invested by Muia, along with his own funds, in a dog-grooming business that eventually failed.

The evidence showed that Muia and Dr. Muiu are both natives of Kenya who come from the same tribe. They met in the United States and became friends. At the time of the loan/investment, Muia was Dr. Muiu's attorney. Muia claimed that he became interested in a dog-grooming business in Omaha and wanted to buy it. He asked Dr. Muiu to invest $5,000 in the business. Muia claimed that he advised Dr. Muiu about the special rules governing an attorney going into business with his client and encouraged Dr. Muiu to get advice from another lawyer. Muia and Dr. Muiu had shared office space, but had not previously been in business together.

Muia purchased the dog-grooming business with Dr. Muiu's money and $19,000 of his own funds. Dr. Muiu was not a signatory on the purchase agreement or the business property lease. The business closed before the end of 2003, and Dr. Muiu never received any return of his investment.

The referee stated that the recollection of the two parties differed. Muia claimed that he told Dr. Muiu about his plans for the money, while Dr. Muiu claimed that Muia did not tell him the purpose of the loan. Dr. Muiu claimed the loan was to be at no interest and was to be repaid in 3 weeks. Dr. Muiu presented the canceled check, on which he had written "PL" on the memorandum line. He testified that this indicated the money was a "personal loan."

The referee also addressed whether Muia failed to timely respond to inquiries from the Counsel for Discipline. The first letter was sent to Muia on February 16, 2005, and after he failed to respond, the Counsel for Discipline sent followup letters on March 16 and 21, and April 18. Muia did not respond to the complaint until June 3. The referee noted that this failure to respond occurred while Muia was already under suspension.

## ANALYSIS

### No. S-04-1375

■ Following a hearing, the referee concluded that Muia's conduct had violated the following disciplinary rules:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

DR 2-110 Withdrawal from Employment.

(A) In general.

. . . .

(2) In any event, a lawyer shall not withdraw from employment until the lawyer has taken reasonable steps to avoid foreseeable prejudice to the rights of his or her client, including giving due notice to the client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.

. . . .

DR 6-101 Failing to Act Competently.

(A) A lawyer shall not:

. . . .

(3) Neglect a legal matter entrusted to him or her.

. . . .

DR 9-102 Preserving Identity of Funds and Property of a Client.

. . . .

(B) A lawyer shall:

. . . .

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession

of the lawyer and render appropriate accounts to the client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

Based on the fact that Muia's license was suspended for 4 months on November 7, 2003, and that Muia had not sought reinstatement of his license at any time after the 4-month period ended on March 8, 2004, the referee recommended that Muia receive no additional suspension. Neither party filed exceptions to the referee's report. When no exceptions to the referee's findings of fact are filed by either party in a disciplinary proceeding, the Nebraska Supreme Court may, at its discretion, adopt the findings of the referee as final and conclusive. *State ex rel. Counsel for Dis. v. Widtfeldt*, 269 Neb. 289, 691 N.W.2d 531 (2005).

■ A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee. *Id.* At the hearing before the referee, a joint stipulation of fact was received into evidence. Because the facts were not in dispute, we need only determine the appropriate sanction. In order to do so, we must consider whether Muia complied with rule 16 regarding notification of clients upon suspension. We must also consider the handling of his trust account while he was suspended.

Muia stated at the hearing before the referee that he did not believe he could continue to negotiate with his clients' medical creditors after his license was suspended because he was no longer representing the clients. He stated that the medical creditors had placed attorney liens on the funds, which prevented Muia from paying the funds to his clients, and that he was concerned that if he gave the money to his clients and they did not pay the medical creditors, the creditors could attempt to collect the funds from Muia. He said he did not believe he had the power either to send the money to his clients or to pay the medical creditors. Muia said he did not understand that the notification provision of rule 16 applied to clients for whom he was holding funds to pay medical creditors.

At the time the incidents in this case arose, rule 16(A) provided that whenever a member was disbarred or suspended from the practice of law, the member was required to:

(1) Notify in writing all of the member's present clients of such fact, and

(2) Assist each client in obtaining a member of the client's choice to complete all matters being handled by him or her, and

(3) Notify in writing all members and nonresident attorneys involved in pending legal or other matters being handled by the member of his or her altered status, and

(4) Return to the Clerk the member's Nebraska State Bar Association membership card.

(5) Within thirty days from the date of said disbarment, suspension, or voluntary surrender, file an affidavit with the Court, stating full compliance with the requirements of this rule and . . . simultaneously submit evidence of full compliance.

. . . .

(7) The Clerk shall notify the Court, in writing, of the compliance or noncompliance of the Respondent with this Rule 16. Noncompliance shall be contempt of court.

Rule 16 was amended on November 10, 2004, to add a requirement that a disbarred or suspended member shall "[p]romptly refund all client funds and close all attorney trust accounts if the imposed sanction is greater than a 30-day suspension. A trust account may remain open if, after a reasonable search, the client or clients eligible to receive funds cannot be located . . . ." Neb. Ct. R. of Discipline 16(A)(3) (rev. 2004). We conclude that the treatment of trust account funds during an attorney's suspension has been addressed by the amendment of rule 16. Although this provision went into effect after the events in the present case, when Muia was suspended, the disciplinary rules provided that a lawyer who withdrew from employment was to give due notice to the client and deliver all papers and property to which the client was entitled. See DR 2-110(A)(2).

The referee found by clear and convincing evidence that Muia had violated DR 2-110(A)(2) (notice requirement) and DR 9-102(B)(3) and (4) (which requires recordkeeping and

payment of funds to clients). Because no exceptions were filed to the referee's report, we consider the referee's finding final and conclusive. The record supports a finding that Muia did not promptly notify all of his clients of his suspension or promptly pay to them the funds he retained in his trust account.

### No. S-05-1115

In this case, the referee found by clear and convincing evidence that Muia had violated the following disciplinary rules:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(5) Engage in conduct that is prejudicial to the administration of justice. . . .

(6) Engage in any other conduct that adversely reflects on his or her fitness to practice law.

. . . .

DR 5-104 Limiting Business Relations with a Client.

(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his or her professional judgment therein for the protection of the client, unless the client has consented after full disclosure.

The referee found that Muia failed to timely and adequately respond to inquiries by the Counsel for Discipline and that Muia failed to fully and adequately advise Dr. Muiu in regard to the rules and considerations when a lawyer and his client go into business together. The referee found it impossible to determine from the evidence who was correct concerning the arrangement between Muia and Dr. Muiu, but the referee was persuaded that Muia did not advise Dr. Muiu properly and sufficiently as to the requirements under DR 5-104, addressing when a lawyer enters into a business relationship with a client. The record supports by clear and convincing evidence the finding of the referee that Muia violated DR 1-102(A)(1), (5), and (6) and DR 5-104(A).

### APPROPRIATE SANCTION

On February 10, 2006, Muia filed a motion to consolidate the two attorney discipline cases. The motion was sustained on

February 15, and this court ordered that case No. S-05-1115 be submitted without oral argument. The Counsel for Discipline filed a "Motion for Judgment" on February 28. On March 1, Muia entered a consent to the motion for judgment. We must now determine the appropriate sanction for Muia's actions.

To determine whether and to what extent discipline should be imposed in a lawyer disciplinary proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Gilroy*, 270 Neb. 339, 701 N.W.2d 837 (2005). Each case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of the case. *Id.*

At issue here is whether Muia should receive credit for the additional time he has, in effect, served on suspension voluntarily. He was initially suspended for 4 months beginning November 7, 2003, and could have sought reinstatement on March 8, 2004. At that time, the charges in case No. S-04-1375 were being investigated, and he did not seek reinstatement. As of March 24, 2006, he will have been suspended for a period of 28 months.

This court has previously entered orders of suspension that were retroactive to the date of a previously ordered suspension. In *State ex rel. Counsel for Dis. v. Wintroub*, 267 Neb. 872, 678 N.W.2d 103 (2004), the attorney was temporarily suspended on December 30, 2002. After a hearing on the formal charges, the referee recommended suspension for 1 year, with credit given for the period of his " 'voluntary temporary suspension.' " *Id.* at 880, 678 N.W.2d at 109. This court noted that when the opinion was filed on April 23, 2004, the attorney had been suspended for a period of more than 15 months. We ordered the attorney suspended retroactively to December 30, 2002, with no possibility of readmission prior to December 30, 2004.

We also ordered a retroactive suspension in *State ex rel. Counsel for Dis. v. Monjarez*, 267 Neb. 980, 679 N.W.2d 226 (2004). The attorney was temporarily suspended on January 18,

2001. Amended formal charges were filed on January 29, 2002, which charges formed the basis of the second case. In an opinion filed on May 14, 2004, this court ordered that the attorney be suspended for a period of 40 months retroactive to the date of his temporary suspension on January 18, 2001. Thus, he was eligible for reinstatement almost immediately upon the filing of the opinion in the second case. See, also, *State ex rel. NSBA v. Jensen*, 260 Neb. 803, 619 N.W.2d 840 (2000) (attorney temporarily suspended on September 15, 1999; on December 8, 2000, suspended for indefinite period retroactive to date of temporary suspension, with no possibility of reinstatement prior to September 15, 2001); *State ex rel. NSBA v. Aupperle*, 256 Neb. 953, 594 N.W.2d 602 (1999) (attorney temporarily suspended May 29, 1998; on May 21, 1999, suspended for indefinite period retroactive to date of temporary suspension, with no possibility of reinstatement prior to May 29, 2000).

However, we have distinguished cases in which the attorney voluntarily ceased the practice of law prior to the filing of formal charges. In *State ex rel. Counsel for Dis. v. Apker*, 263 Neb. 741, 642 N.W.2d 162 (2002), the referee recommended that the attorney be suspended retroactively to the date he voluntarily ceased practicing law. This court noted that the case was distinguishable from *Jensen* and *Aupperle* because in those cases, the court had temporarily suspended the licenses to practice law during the pendency of the disciplinary proceedings. In *Apker*, no temporary suspension had been requested or entered by the court. We stated:

> To make a suspension from the practice of law retroactive under these circumstances would be to allow the respondent to choose the time and circumstances of his own suspension and would not serve the purposes of attorney discipline. . . . While we do not find that a retroactive suspension is appropriate where a temporary suspension has not been ordered by this court, we nonetheless consider Apker's voluntary cessation of the practice of law as a mitigating factor in determining what sanction should be imposed.

*Id.* at 750, 642 N.W.2d at 170.

The case at bar is slightly different from previous disciplinary cases. Muia was temporarily suspended from the practice of law for 4 months in a previous action. See *State ex rel. Counsel for Dis. v. Muia*, 266 Neb. 970, 670 N.W.2d 635 (2003). He chose not to seek reinstatement because the events in case No. S-04-1375 were under investigation at the time he could have sought reinstatement. Thus, it is not a case in which the temporary suspension was ordered while the investigation proceeded, as in *Wintroub* and *Monjarez*, among others. Nor is it precisely like *Apker*, in which the attorney voluntarily ceased practicing law prior to the filing of formal charges. We believe it is appropriate to consider Muia's voluntary continuation of his suspension as a mitigating factor in determining his sanction.

In case No. S-04-1375, Muia was found to have failed to notify his clients of his suspension from the practice of law as required by rule 16. We have held that failure to comply with rule 16 "places one in contempt of this court and constitutes an aggravating circumstance." *State ex rel. NSBA v. Mahlin*, 252 Neb. 985, 989, 568 N.W.2d 214, 216 (1997). See, also, *State ex rel. NSBA v. Brown*, 251 Neb. 815, 560 N.W.2d 123 (1997). However, the Counsel for Discipline did not file charges against Muia asserting that he violated rule 16.

The referee also found in case No. S-04-1375 that Muia had violated the disciplinary rules related to withdrawal from employment, neglecting a legal matter, and maintaining records of funds and delivering such funds or other property to the client. The facts, as stipulated, showed that Muia failed to timely pay settlement proceeds to Reed and his medical creditors, failed to inform Reed that Muia was under suspension, failed to notify other clients that he was under suspension or to refund money in his trust account to them, and failed to notify Sutherland of the replacement attorney or of the correct court date for her case. In case No. S-05-1115, the referee found that Muia had violated the disciplinary rules related to limiting business relations with a client and that he failed to timely and adequately respond to inquiries by the Counsel for Discipline. The evidence showed that Muia did not fully and adequately advise

Dr. Muiu concerning the necessary procedures to follow when a lawyer and his client go into business together.

The factors to be considered in determining a sanction include the nature of the offense. As the referee noted, Muia's failure to properly advise Dr. Muiu "continues a thread that goes through all of . . . Muia's disciplinary matters - namely, his botched relations with his clients and his failure to do what is proper in regard to client relations." In case No. S-04-1375, Muia neglected clients and failed to follow through in negotiating settlements for them. He failed to notify them of his suspension, and he failed to take any action related to the client funds in his trust account. Our cases show a wide range of sanctions for similar violations. In *State ex rel. Counsel for Dis. v. James*, 267 Neb. 186, 673 N.W.2d 214 (2004), the attorney was suspended for 90 days after being found to have violated DR 1-102(A)(1) and (5), DR 6-101(A)(3), and DR 9-102(B)(4) by neglecting a client's case and failing to turn over a client's file. However, in *State ex rel. Counsel for Dis. v. Rasmussen*, 266 Neb. 100, 662 N.W.2d 556 (2003), the attorney was disbarred after evidence was presented that the attorney failed to timely return a retainer, neglected a case, and failed to maintain records of client funds.

Another factor we may consider is the attitude of the offender generally. In case No. S-04-1375, Muia apparently was cooperative in working with the Counsel for Discipline. However, his testimony at the hearing indicates that he was not willing to accept full responsibility for failing to return funds to his clients during his suspension. Muia stated that he asked his attorney for advice about the matter and that the attorney recommended Muia wait before taking any action. Muia claimed that he did not know how to handle the funds while he was on suspension. In case No. S-05-1115, Muia failed to timely respond to letters from the Counsel for Discipline.

■ Neb. Ct. R. of Discipline 4 (rev. 2004) provides that the following may be considered by the court as sanctions for attorney misconduct: (1) disbarment; (2) suspension for a fixed period of time; (3) probation in lieu of suspension, on such terms as the court may designate; (4) censure and reprimand; or (5) temporary suspension. See *State ex rel. Counsel for Dis. v. Villarreal*, 267 Neb. 353, 673 N.W.2d 889 (2004). Rule 4(B) provides that this

court may, in its discretion, impose one or more of these disciplinary sanctions.

We conclude that the referee's reports support a finding that Muia should be suspended from the practice of law for a certain period of time. Muia's license was suspended for 4 months beginning November 7, 2003. See *State ex rel. Counsel for Dis. v. Muia*, 266 Neb. 970, 670 N.W.2d 635 (2003). However, he did not seek reinstatement of his license after the expiration of this 4-month period. In case No. S-04-1375, the referee recommended a term of suspension from the practice of law beginning March 8, 2004 (the date Muia could have requested reinstatement), and concluding upon the filing of this opinion. In case No. S-05-1115, the referee again recommended that Muia be placed on suspension, followed by a term of probation with monitoring by another licensed Nebraska attorney for not less than 2 years following reinstatement of Muia's license. We agree with these recommendations. In addition, to protect the public, we order that Muia receive additional assistance in running a law practice.

In *State ex rel. Counsel for Dis. v. Waggoner*, 267 Neb. 583, 675 N.W.2d 686 (2004), the respondent was publicly reprimanded after it was determined that she had unduly delayed completion of certain legal matters for two clients and had failed to deposit into her attorney trust account a retainer paid to her by a third client. In addition, we entered an order placing the respondent on probation with monitoring for 18 months. In a second matter, additional charges were filed concerning events that occurred during the same timeframe and before discipline had been imposed. *State ex rel. Counsel for Dis. v. Waggoner*, 268 Neb. 895, 689 N.W.2d 316 (2004). We entered an order continuing the probationary period with monitoring for an additional 12 months.

In case No. S-04-1375, the parties agreed at oral argument that Muia would benefit from the assistance of a monitor to help him learn techniques to operate and organize a law practice. In addition to the suspension Muia has served during the pendency of this matter, we find that he should be subject to probation with monitoring for a period of at least 24 months, subject to the following terms:

The probation shall include the monitoring of Muia by a lawyer that is agreed upon by the parties. Before Muia resumes the practice of law, the monitor shall be appointed as per agreement by the parties. The monitor shall not be compensated for his or her monitoring duties; however, the monitor shall be reimbursed by Muia for actual expenses incurred.

Each month during the probationary period, Muia shall provide the monitor with a list of all cases for which Muia is then responsible. Muia shall personally meet with the monitor each month to discuss the list of cases. The monitor shall also assist Muia in developing and implementing appropriate office procedures.

The names of Muia's clients shall be kept confidential between Muia and the monitor. The list of cases shall include the following for each case:

1. Name of client and date attorney-client relationship began.

2. General type of case (e.g., divorce, adoption, probate, contract, real estate, civil litigation, criminal).

3. Date of last contact with client.

4. Last type and date of work completed on file (e.g., pleading, correspondence, document preparation, discovery, court hearing).

5. Next type of work to be done on case and date on which work should be completed.

6. Any applicable statute of limitations and its date.

The monitor shall have the right to contact Muia with any questions regarding the list. If at any time the monitor believes Muia has violated a disciplinary rule or has failed to comply with the terms of probation, the monitor shall report the same to the Counsel for Discipline. At the conclusion of the term of probation, the monitor shall notify this court whether Muia has successfully completed the probationary period. If Muia successfully completes the probation, it shall be terminated.

## CONCLUSION

Based on the recommendation of the Counsel for Discipline, the reports of the referee, and our independent review of the record, we find by clear and convincing evidence that Muia has violated DR 1-102(A)(1), (5), and (6); DR 2-110(A)(2);

DR 5-104(A); DR 6-101(A)(3); DR 9-102(B)(3) and (4); disciplinary rule 9(E); and his oath as an attorney. Muia should be and hereby is suspended from the practice of law in the State of Nebraska retroactive to March 8, 2004. Upon the appointment of a monitor as required above and upon notice to the court of such appointment, Muia may resume the practice of law in the State of Nebraska. It is further ordered that Muia be subject to probation with monitoring as outlined above for a period of at least 24 months and that Muia shall successfully comply with the terms of the probation. Muia is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. of Discipline 23(B) (rev. 2001).

JUDGMENT OF SUSPENSION AND PROBATION.

WRIGHT, J., participating on briefs.

McCORMACK, J., not participating.