STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE OF THE NEBRASKA SUPREME COURT, RELATOR, V. EDWARD L. WINTROUB, RESPONDENT.
678 N.W.2d 103

Filed April 23, 2004.   No. S-03-452.

John W. Steele, Assistant Counsel for Discipline, for relator.

Waldine H. Olson, of Nolan, Olson, Hansen, Fieber & Lautenbaugh, L.L.P., for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

The office of the Counsel for Discipline of the Nebraska Supreme Court, as relator, commenced this disciplinary proceeding against attorney Edward L. Wintroub, respondent. Following

an evidentiary hearing, a referee appointed by this court found multiple violations of the Code of Professional Responsibility and recommended a 1-year period of suspension, with readmission subject to a period of probation. Both parties have filed exceptions to the referee's report.

## BACKGROUND

Wintroub was admitted to the practice of law in Nebraska on June 28, 1965. At all relevant times, he was engaged in private practice in Omaha. From 1974 to 2001, Wintroub's practice consisted of insurance defense work regarding liquor liability laws for one principal client. Sometime in 2001, Wintroub's relationship with this client ended, causing significant financial pressures on his law practice.

At all relevant times, Wintroub maintained a trust account at First Westroads Bank. He did not, however, keep a separate ledger for each client's account. Instead, when a settlement draft was received, he would obtain a statement of the case expenses found in the client's file and prepare two checks; one for his fee and expenses and the other for the client.

On December 30, 2002, this court granted the application of the Committee on Inquiry of the Second Disciplinary District for a temporary suspension of Wintroub's license pursuant to Neb. Ct. R. of Discipline 12 (rev. 2002) on the basis of alleged multiple irregularities in Wintroub's trust account. On April 22, 2003, the Counsel for Discipline filed formal charges consisting of five counts alleging multiple trust account violations occurring in 2001 and 2002. Wintroub filed an answer which neither admitted nor denied the factual allegations, but placed the Counsel for Discipline on strict proof. At the hearing before the referee, Wintroub admitted the factual allegations of counts I through IV while denying the legal conclusions asserted by relator. During the hearing, relator voluntarily dismissed the fifth count. We summarize the factual allegations thus admitted and the referee's findings with respect thereto.

## COUNT I

On or about November 7, 2001, Wintroub purported to settle a personal injury case on behalf of his client, Debra Gillam, for $30,000, apparently believing that he had the requisite authority

to do so. He negotiated the settlement draft issued by an insurance company by signing Gillam's name and his, and then deposited the draft in his trust account. He then issued a check to himself in the amount of $10,150 for fees and expenses relating to the settlement.

At some time thereafter, Gillam informed Wintroub that she had not authorized him to settle her case for $30,000. Wintroub sent a check in the amount of $30,000 to the insurance company, but then notified the company that he was stopping payment on the check. He did not refund the settlement proceeds to the insurance company until December 2002, after being requested to do so by Gillam's new attorney.

At the point that Wintroub realized that Gillam had not authorized the settlement, there should have been at least $19,850, representing Gillam's share of the failed settlement, on deposit in Wintroub's trust account. When Wintroub sent the initial refund check to the insurance company, his trust account balance should have been at least $30,000. Between November 1 and 30, 2001, the balance in Wintroub's trust account fell to a low of $122.13. Between December 1, 2001, and July 1, 2002, Wintroub's trust account balance fell below $30,000 on numerous occasions and in fact had a negative balance on March 18, 2002. Relator alleged that the foregoing constituted a violation of Wintroub's oath of office as an attorney and the following disciplinary rules:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

. . . .

DR 9-102 Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm shall be deposited in an identifiable account or accounts maintained in the state in which the law office is situated in one or more state or federally chartered banks, savings banks, savings and loan associations, or building and loan associations insured by the Federal Deposit Insurance

Corporation, and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay account charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

. . . .

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them.

With respect to count I, the referee found by clear and convincing evidence that Wintroub failed to preserve client funds regarding the settlement proceeds, constituting a violation of Canon 9, DR 9-102(A), and his oath of office as an attorney. The referee rejected Wintroub's argument that because Gillam refused the funds and denied authorizing the settlement, the proceeds which he received from the insurance company never became client funds. The referee further concluded that such conduct was a violation of a disciplinary rule prohibited by Canon 1, DR 1-102(A)(1), and Wintroub's oath of office as an attorney. He concluded, however, that there was not clear and convincing evidence that Wintroub engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation.

## COUNT II

On January 23 and 30, 2002, Wintroub deposited two checks from the Great Northern Insurance Company into his trust account. The checks, both payable to Wintroub and his wife, were in the amounts of $54,500 and $27,250. On December 13, 2001, and January 3, February 15 and 25, and March 18, 2002, Wintroub made deposits into his trust account in the amounts of $40,000, $55,000, $30,000, $5,000, and $5,000, respectively.

The deposit slips did not disclose the source of the funds. On March 4 and April 8 and 22, 2002, Wintroub deposited $30,000, $9,500, and $9,600 into his trust account, respectively. Wintroub was identified as the remitter for the cashier's checks used to make the deposits. On June 17, 2002, Wintroub deposited a check from an Omaha jeweler in the amount of $20,000, payable to him, into his trust account. The memorandum portion of the check indicates it was for a purchase.

Relator alleged that the foregoing conduct constituted a violation of Wintroub's oath of office as an attorney, as well as DR 1-102(A)(1) and (4) and DR 9-102(A) and (B).

With respect to this count, the referee found by clear and convincing evidence that Wintroub had commingled personal funds in his trust account, constituting a violation of DR 9-102(A), and that he had failed to maintain a complete record of client funds, constituting a violation of DR 9-102(B). As such, the referee found clear and convincing evidence that Wintroub violated a disciplinary rule, constituting a violation of DR 1-102(A)(1), and that he violated his oath of office as an attorney. He found, however, that there was not clear and convincing evidence that Wintroub engaged in conduct involving dishonesty, deceit, fraud, or misrepresentation. The referee's findings with respect to count II include the following:

> The greater weight of the evidence suggests that respondent may have been parking personal funds in the trust account for unexplained reasons. The greater weight of the evidence also shows that respondent was engaged in a kiting scheme by withdrawing fees before he deposited the insurance proceeds attributable to the fee. It is undisputed, however, that no client was actually injured, although the potential for injury was great.

### COUNT III

On or about November 14, 2001, a lawyer in Wintroub's firm settled a claim on behalf of Francis Haiar and deposited the $30,000 insurance proceeds into the trust account. On or about January 16, 2002, Wintroub issued a check payable to Haiar drawn on the trust account in the amount of $19,581.37 as proceeds of the settlement. Between November 14, 2001, and January 16, 2002,

the balance of Wintroub's trust account fell below the settlement proceeds payable to Haiar.

Relator alleged that the foregoing conduct violated Wintroub's oath of office as an attorney, DR 1-102(A)(1) and (4), and DR 9-102(A). The referee found clear and convincing evidence that Wintroub failed to preserve the identity of client funds regarding the settlement proceeds obtained on behalf of Haiar, constituting a violation of DR 9-102(A). The referee further determined from this evidence that Wintroub violated a disciplinary rule, constituting a violation of DR 1-102(A)(1), and that he violated his oath of office as an attorney. The referee found no clear and convincing evidence, however, that Wintroub engaged in conduct involving dishonestly, deceit, fraud, or misrepresentation.

## COUNT IV

On or about December 21, 2001, Wintroub or a member of his firm settled a case on behalf of Jamie North and deposited the $25,000 insurance check into the trust account. On or about January 3, 2002, Wintroub issued a trust account check to North in the amount of $16,432.09 as her share of the settlement proceeds. Between December 21, 2001, and January 3, 2002, the balance in Wintroub's trust account fell to $7,317.70. The referee found that Wintroub "appears to have issued three trust account checks to himself for his fee in the North matter," the first for $6,000, issued 5 days before the insurance proceeds were deposited in the trust account; the second for $7,000, issued 3 days before the deposit; and the third for $8,000, issued 3 days after the deposit. Relator alleged that these facts constituted violations of Wintroub's oath of office as an attorney, DR 1-102(A)(1) and (4), and DR 9-102(A). With respect to this count, the referee found clear and convincing evidence that Wintroub failed to preserve the identity of client funds regarding the North settlement proceeds, in violation of DR 9-102(A). As such, he found clear and convincing evidence that Wintroub violated a disciplinary rule, constituting a violation of DR 1-102(A)(1), and that he violated his oath of office as an attorney. However, the referee found there was not clear and convincing evidence that Wintroub had engaged in conduct involving dishonesty, deceit, fraud, or misrepresentation.

## MITIGATION AND SANCTIONS

The referee correctly noted that commingling and misappropriation of client funds typically warrants disbarment, but that the determination of an appropriate penalty to be imposed on an attorney requires consideration of any mitigating factors. He found the following mitigating factors in this case: (1) Wintroub has not been the subject of other disciplinary actions, (2) he truly regrets his conduct and is remorseful, (3) he cooperated fully and completely with the inquiry, (4) the conduct occurred over a relatively isolated period of time, and (5) the conduct is inconsistent with Wintroub's record as an attorney over the 36-year period prior to 2001.

The referee then addressed Wintroub's contention that his use of prescription medications during the time period at issue was a mitigating factor to be considered. In this regard, the referee found that Wintroub began taking prescription medications on the advice of his physician three times per day in 1998 to reduce his stress and chronic anxiety. Over the next several years, Wintroub continued to take prescribed medications to control his anxiety, and the amount of medications taken would generally depend on his stress level. At times, he was taking as many as 16 pills in a single day.

Beginning in approximately August 1999, Wintroub began to exhibit behavior which his friends and coworkers found bizarre. This behavior included memory lapses, confusion, trouble concentrating and remembering, slurred speech, and mood disturbances. Wintroub was observed singing and throwing food at people during lunch at a local restaurant. When questioned about this behavior the following day, Wintroub had no recollection. Friends and coworkers also testified that during this time period, Wintroub failed to recognize traffic signals when driving, fell out of a booth at a local restaurant, and authored hostile interoffice memorandums. He also apparently believed that a longtime friend had accused him of kidnapping the friend's granddaughter. In addition, Wintroub began missing meetings and appointments, and on at least one occasion, he fell asleep during a meeting with a client. Wintroub's trust account records indicate that during this time period, he would often type the wrong date on a check,

sometimes being off by a month, sometimes by several months, and sometimes transposing the date and month.

After considering all of the evidence, the referee concluded that Wintroub's use of prescription medications was consistent with his doctors' recommendations for treating his chronic anxiety. He further concluded that the use of the prescription medications and the side effects caused by such use were mitigating factors. The referee found that Wintroub has ceased using the medications. The referee recommended that Wintroub be suspended from the practice of law for a period of 1 year, with credit given for the period of his "voluntary temporary suspension." The referee further recommended that upon readmission, Wintroub should be subject to a period of probation for a period of not less than 2 years.

During the pendency of this appeal, the bill of exceptions was amended by agreement of the parties and leave of this court to include two documents which were not considered by the referee. The first document is entitled "Monitoring Contract Substance Abuse Recovery" and dated January 15, 2004, and is signed by Wintroub and the director of the Nebraska Lawyers Assistance Program. The second document is an affidavit signed by Wintroub on March 4, 2004, attesting to his compliance with the conditions of the monitoring contract, which conditions include ongoing counseling, participation in a 12-step program, and weekly contact with an attorney monitor. Wintroub further states that he has not taken any of the medications which had previously been prescribed for him since January 2003, when he suffered a grand mal seizure and was advised by his physician that the medications were the likely cause of his behavior problems and impairment of his cognitive abilities.

## EXCEPTIONS

Both parties filed exceptions to the referee's report. Relator alleged that the referee erred in (1) finding there was not clear and convincing evidence that Wintroub's conduct violated DR 1-102(A)(4), i.e., dishonesty, deceit, fraud, and misrepresentation; (2) finding that Wintroub's excessive use of prescribed medications mitigates against the presumption of disbarment in this case; (3) finding that Wintroub should be given credit for the

time period of his "voluntary temporary suspension"; and (4) recommending a sanction that is too lenient.

Wintroub alleged that the referee erred in (1) concluding that Wintroub received $21,000 in fees and that he paid North $16,432.09 out of insurance proceeds totaling $25,000; (2) finding that he failed to preserve the identity of client funds regarding the settlement proceeds obtained on behalf of Gillam; (3) speculating that Wintroub "may have been parking personal funds in the trust account for unexplained reasons"; and (4) inferring that Wintroub was engaged in a "kiting scheme."

## STANDARD OF REVIEW

A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. Counsel for Dis. v. Achola*, 266 Neb. 808, 669 N.W.2d 649 (2003). Disciplinary charges against an attorney must be established by clear and convincing evidence. *Id.*

## ANALYSIS

### WINTROUB'S EXCEPTIONS

Wintroub contends that the funds associated with the failed Gillam settlement were not client funds within the meaning of DR 9-102(A) because Gillam denied authorizing the settlement and therefore disclaimed any interest in the funds. We agree with the referee that this argument is without merit. The insurance company sent the funds to Wintroub, in his capacity as Gillam's attorney, based upon his representation that Gillam had agreed to the settlement. When he realized that she had not, Wintroub was obligated, in his capacity as her attorney, to return the funds to the insurance company, which he eventually did. He had no right to treat the funds as his own prior to making the refund. Thus, the referee properly considered this transaction in determining that Wintroub had committed the disciplinary violations alleged in count I of the formal charges.

Although Wintroub does not deny that the evidence submitted with respect to count II establishes the commingling of client funds with personal funds, he takes exception to the referee's findings, with respect to count II, that Wintroub "was engaged in a kiting scheme by withdrawing fees before he deposited the insurance proceeds attributable to the fee" and that Wintroub "may have been parking personal funds in the trust account for unexplained reasons." We conclude that there is clear and convincing evidence that Wintroub did in fact withdraw fees from his trust account before depositing settlement proceeds. However, Wintroub was not charged with engaging in a "kiting scheme," and there is no clear and convincing evidence that he did so. There is, however, clear and convincing evidence that Wintroub deposited personal funds in his trust account.

Wintroub takes exception to the findings of the referee, with respect to count IV, that Wintroub received $21,000 in fees and that he paid North $16,432.09 out of settlement proceeds totaling $25,000. It is not disputed that the North claim was settled for a total of $25,000 and that Wintroub disbursed $16,432.09 to North as net settlement proceeds. The record also reflects that Wintroub issued a trust account check to himself for $6,000, designated "FeeNorth" on the memorandum line; that he issued another check to himself for $7,000, designated "partialNorth"; and that he issued a third check to himself for $8,000, designated "North." While we acknowledge the mathematical inconsistency, we determine by clear and convincing evidence that the aforementioned checks drawn on Wintroub's trust account were issued as reflected above.

### RELATOR'S EXCEPTIONS

Relator takes exception to the referee's findings that there was not clear and convincing evidence that Wintroub engaged in conduct involving dishonesty, deceit, fraud, and misrepresentation, so as to constitute a violation of DR 1-102(A)(4) with respect to each of the four counts. Based upon our review of the record, we agree with the referee's findings in this regard. Relator's remaining exceptions involve the sanction recommended by the referee. We will address those issues *infra* in our independent determination of the appropriate sanction.

SANCTION

■ We agree with the referee's determination that there is clear and convincing evidence that Wintroub violated DR 1-102(A)(1) and DR 9-102(A) with respect to count I; that he violated DR 1-102(A)(1) as well as DR 9-102(A) and (B) with respect to count II; that he violated DR 1-102(A)(1) and DR 9-102(A) with respect to count III; that he violated DR 1-102(A)(1) and DR 9-102(A) with respect to count IV; and that he violated his oath of office as an attorney with respect to all counts. We must therefore determine an appropriate disciplinary sanction. Each case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case. *State ex rel. Counsel for Dis. v. James, ante* p. 186, 673 N.W.2d 214 (2004).

■ To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Villareal, ante* p. 353, 673 N.W.2d 889 (2004); *State ex rel. Counsel for Dis. v. Janousek, ante* p. 328, 674 N.W.2d 464 (2004). For purposes of determining the proper discipline of an attorney, the Nebraska Supreme Court considers the attorney's acts both underlying the events of the case and throughout the proceeding. *State ex rel. Counsel for Dis. v. James, supra; State ex rel. Counsel for Dis. v. Achola,* 266 Neb. 808, 669 N.W.2d 649 (2003).

■ In the context of attorney discipline proceedings, "misappropriation" is any unauthorized use of client funds entrusted to an attorney, including not only stealing, but also unauthorized temporary use for the attorney's own purpose, whether or not the attorney derives any personal gain or benefit therefrom. *State ex rel. NSBA v. Malcom,* 252 Neb. 263, 561 N.W.2d 237 (1997). The evidence in this case establishes both misappropriation of client funds and commingling of personal funds with client funds.

■ Absent mitigating circumstances, the appropriate discipline in cases of misappropriation or commingling of client funds

is disbarment. *State ex rel. Counsel for Dis. v. Rasmussen,* 266 Neb. 100, 662 N.W.2d 556 (2003). The determination of an appropriate penalty to be imposed on an attorney requires consideration of any mitigating factors. *State ex rel. Counsel for Dis. v. Janousek, supra.* In cases involving misappropriation and commingling of client funds, we have stated that mitigating factors overcome the presumption of disbarment only if they are extraordinary. *State ex rel. Counsel for Dis. v. Huston,* 262 Neb. 481, 631 N.W.2d 913 (2001). However, this court has not adopted a "bright line rule" that misappropriation of funds will always result in disbarment. *State ex rel. Counsel for Dis. v. Achola, supra.* In this as in any other disciplinary action, the determination of the appropriate penalty to be imposed on an attorney requires consideration of any mitigating factors. *State ex rel Counsel for Dis. v. Janousek, supra*; *State ex rel. Counsel for Dis. v. Achola, supra.*

There are factors present in the instant case which we have considered as mitigating in prior disciplinary cases. It is undisputed that Wintroub cooperated throughout the course of the disciplinary proceedings and that he is genuinely remorseful about his conduct. See, *State ex rel. Counsel for Dis. v. Mills, ante* p. 57, 671 N.W.2d 765 (2003) (cooperation); *State ex rel. Counsel for Dis. v. Achola, supra* (remorse). It also appears to be undisputed that no client was actually injured by Wintroub's conduct and that any restitution was completed prior to the time disciplinary proceedings were commenced. See *State ex rel. Counsel for Dis. v. Achola, supra.* The record does not reflect any previous disciplinary action against Wintroub during the more than 30 years that he has practiced law in this state. The record includes several letters from employees and attorneys attesting to Wintroub's character and fitness as an attorney. See *id.*

These mitigating factors alone, however, are insufficient to overcome the presumption of disbarment in a case such as this involving numerous instances of misappropriation and commingling of client funds. Thus, the primary question in this action is whether Wintroub's impairment from use of prescription medications, combined with the mitigating factors previously listed, is so extraordinary as to overcome the presumption of disbarment. Wintroub argues that given the nature and degree of his impairment, the disciplinary violations were the result of mistake,

confusion, and negligence as opposed to dishonesty, fraud, deceit, or misrepresentation. Having the benefit of observing Wintroub's testimony and the other evidence offered on this point, the referee concluded that "there is too much evidence of respondent's confusion and gross negligence, and too much evidence of 36-years of spotless service for this referee to recommend disbarment."

Based upon our de novo review, we reach the same conclusion. Viewed in the context of Wintroub's long legal career, the time period at issue in this disciplinary proceeding was marked by aberrant personal and professional behavior. The record reflects that during this period, Wintroub suffered from concentration problems, slurred speech, memory lapses, disorientation, and mood disturbances. There is medical evidence that during this period, Wintroub's judgment and ability to function normally were significantly impaired by his lawful use of three different medications prescribed for stress and anxiety, some of which were to be taken on an "as needed" basis. We agree with the conclusion of the referee that the impairment was genuine and severe. The record reflects that Wintroub has recognized and confronted his impairment, has eliminated its cause, and has taken affirmative steps to prevent its recurrence.

Although it did not involve misappropriation or commingling of funds, our decision in State ex rel. Counsel for Dis. v. Thompson, 264 Neb. 831, 652 N.W.2d 593 (2002), provides a framework for assessing psychological impairment as a mitigating factor in a disciplinary case. In that case, we held that in order to establish depression as a mitigating factor, the respondent must show (1) medical evidence that he or she is affected by depression, (2) that the depression was a direct and substantial contributing cause to the misconduct, and (3) that treatment of the depression will substantially reduce the risk of further misconduct. Here, we conclude that these requirements have been satisfied with respect to Wintroub's addiction to prescription medications. See, also, State ex rel. NSBA v. Jensen, 260 Neb. 803, 619 N.W.2d 840 (2000).

Although we conclude that there are sufficient mitigating factors in this case to overcome the presumption that a lawyer who misappropriates and commingles client funds should

be disbarred, we also conclude that Wintroub's conduct was of a nature as to warrant a substantial disciplinary sanction more severe than that recommended by the referee. Misappropriation of client funds by an attorney violates basic notions of honesty and endangers public confidence in the legal profession. *State ex rel. Counsel for Dis. v. Achola*, 266 Neb. 808, 669 N.W.2d 649 (2003). Misappropriation as the result of a serious, inexcusable violation of a duty to oversee entrusted funds is deemed willful, even in the absence of improper intent or deliberate wrongdoing. *State ex rel. NSBA v. Veith*, 238 Neb. 239, 470 N.W.2d 549 (1991). Although Wintroub was significantly impaired by his use of prescription medications, he was not totally without the ability to control his actions. While the mitigating factors in this case are sufficient to overcome the presumption that misappropriation and commingling of client funds warrants disbarment, the egregious conduct must nevertheless have a significant disciplinary consequence.

Wintroub has been suspended from the practice of law since December 30, 2002, a period of more than 15 months. We hereby enter a judgment of suspension retroactive to that date with no possibility of readmission prior to December 30, 2004. Upon application for reinstatement, Wintroub shall have the burden of proving that he has not practiced law during the period of suspension and that he has met the requirements of Neb. Ct. R. of Discipline 16 (rev. 2001). In addition, reinstatement shall be conditioned upon (1) the payment of all costs of this action, which are hereby taxed to Wintroub; (2) a showing of full compliance by Wintroub with all terms and conditions of his monitoring contract with the Nebraska Lawyers Assistance Program (NLAP) dated January 15, 2004, and any subsequent amendments thereto during the period of suspension; (3) a showing, confirmed by the office of the Counsel for Discipline, that there are no pending or unresolved disciplinary charges against Wintroub; (4) a showing that Wintroub has completed a course in law office management which includes instruction in proper bookkeeping procedures; (5) the submission by Wintroub and approval by this court of a probation plan, to be in effect for a period of not less than 2 years following readmission, whereby Wintroub's recovery program and his compliance with the Code of Professional Responsibility

would be monitored by an attorney monitor selected or approved by the director of the Nebraska Lawyers Assistance Program. Such plan should provide that the attorney monitor shall not be compensated for his or her duties, but he or she shall be reimbursed by Wintroub for actual expenses incurred. The plan of probation must also require that the attorney monitor will review any trust account maintained by Wintroub on a monthly basis during the period of probation and report any trust account irregularity or other disciplinary violation to the office of the Counsel for Discipline. At the end of the 2-year probationary period, it will be Wintroub's burden to show cause why the period of probation should not be extended for another year.

## CONCLUSION

It is the judgment of this court that Wintroub be suspended from the practice of law, beginning on the date of his temporary suspension on December 30, 2002, and continuing until at least December 30, 2004, when he will be eligible to apply for readmission. Upon readmission, Wintroub shall be subject to a term of probation for not less than 2 years, in compliance with the terms as outlined above. Wintroub shall comply with disciplinary rule 16, and upon failure to do so, Wintroub shall be subject to punishment for contempt of this court. Accordingly, Wintroub is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. of Discipline 23(B) (rev. 2001).

JUDGMENT OF SUSPENSION AND PROBATION.