None of the proposed allegations called into question Fernando-Granados' fault or culpability. Therefore, we find that, given the great weight of the evidence against Fernando-Granados, there was no ineffective assistance of counsel because there was no prejudice to Fernando-Granados' case.

### CONCLUSION

The trial court did not err in denying Fernando-Granados an evidentiary hearing because, given the great weight of the evidence against him, even finding the allegations true would not have been prejudicial to Fernando-Granados' case.

AFFIRMED.

———————————

STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, RELATOR, V.
LENNY W. THEBARGE, JR., RESPONDENT.
___ N.W.2d ___

Filed October 31, 2014.    Nos. S-13-1001, S-14-128.

1. **Disciplinary Proceedings.** A proceeding to discipline an attorney is a trial de novo on the record.
2. ____. Failure to answer formal charges subjects a respondent to judgment on the formal charges filed.
3. ____. Six factors are considered in determining whether and to what extent discipline should be imposed: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.
4. ____. Cumulative acts of attorney misconduct are distinguishable from isolated incidents, therefore justifying more serious sanctions.
5. ____. Absent mitigating circumstances, disbarment is the appropriate discipline in cases of misappropriation or commingling of client funds.
6. ____. Neglect of client cases and failure to cooperate with the Counsel for Discipline are grounds for disbarment.
7. ____. Fabricating evidence with the intent to deceive the Counsel for Discipline interferes in a disciplinary investigation, which merits a severe sanction.
8. ____. In an attorney discipline proceeding, failure to regard the rules of professional conduct and failure to abide by one's oath as an attorney are considered aggravating factors.

Original actions. Judgment of disbarment.

Kent L. Frobish and John W. Steele, Assistant Counsels for Discipline, for relator.

No appearance for respondent.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Per Curiam.

## NATURE OF CASE

Lenny W. Thebarge, Jr. (Respondent), a member of the Nebraska State Bar Association, has been formally charged with violations of the Nebraska Rules of Professional Conduct and his oath of office as an attorney. Formal charges involved misappropriation of client funds, failure to communicate with clients, and obstruction of justice. We granted judgment on the pleadings, and we now determine the appropriate discipline for Respondent.

## BACKGROUND

In 2011, Respondent was admitted to practice law in the State of Nebraska. At all times relevant to these proceedings Respondent was engaged in the private practice of law in Omaha, Nebraska.

Charges against Respondent are set forth below in detail. Respondent has not answered any of the formal charges against him, and therefore, judgment on the pleadings was entered.

## Count I

In April 2012, Respondent was engaged in legal services with his client Jonathan Nelson. On August 28, 2012, Respondent received a check for $10,939.50 on behalf of Nelson. Respondent placed the check in his client trust fund account. Nelson says he never gave Respondent permission to apply this check to his outstanding bill, although Respondent claims he was authorized by Nelson to do so. However, on August 29, Respondent withdrew $1,700 from his client trust fund, leaving an account balance of only $9,989.50 and leaving Respondent out of trust by $950 in regard to Nelson's funds.

In November 2012, Nelson filed a grievance with the Counsel for Discipline, claiming that Nelson had never been provided an accounting on the check received by Respondent. During the investigation, Respondent claimed he had a written fee agreement with Nelson, but failed to provide copies of the written fee agreement to the Counsel for Discipline.

Therefore, Respondent was charged with violating and was determined to have violated Neb. Ct. R. of Prof. Cond. §§ 3-501.15 (safekeeping property), 3-501.16 (declining or terminating representation), 3-508.1 (bar admission and disciplinary matters), and 3-508.4 (misconduct).

## Count II

In October 2012, Respondent engaged in legal services for Kimberly Cabriales. Cabriales paid Respondent an advance fee of $300. Respondent deposited Cabriales' check into his trust account. Prior to this deposit, Respondent's client trust account had a zero balance. Immediately upon depositing Cabriales' check, Respondent transferred $200 from the trust account to his own personal account, leaving a balance in the trust account of only $100. The next day, Respondent transferred the remaining $100 to another account owned by Respondent.

Cabriales filed a grievance with the Counsel for Discipline. In response to the grievance, Respondent submitted copies of four letters he claims he mailed to Cabriales in October, November, and December 2012. However, these letters were dated 2013. Cabriales denies ever having received any letters from Respondent, while Respondent claims that none of the letters were returned to him by the post office. Respondent refused the Counsel for Discipline's request to have his computer examined by an expert to establish when the letters in question were actually created on Respondent's computer. Therefore, it is assumed that the four letters were fabricated for purposes of the grievance filed by Cabriales.

Therefore, Respondent was charged with violating and was determined to have violated Neb. Ct. R. of Prof. Cond. §§ 3-501.3 (diligence) and 3-501.4 (communications) and

conduct rules §§ 3-501.15 (safekeeping property), 3-508.1 (bar admission and disciplinary matters), and 3-508.4 (misconduct).

## COUNT III

In June 2013, Respondent engaged in legal services for Michael Miller. Miller paid Respondent a $1,000 advance fee for the handling of his divorce. No portion of this advance fee was placed into Respondent's client trust fund account. Miller filed a grievance alleging that Respondent failed to communicate with him and failed to provide Miller with an accounting regarding his advance fee.

Therefore, Respondent was charged with violating and was determined to have violated conduct rules §§ 3-501.3 (diligence), 3-501.4 (communications), § 3-501.15 (safekeeping property), and 3-508.4 (misconduct).

## COUNT IV

When Counsel for Discipline informed Respondent that it was performing an audit of his client trust account, he failed to produce any requested information.

Therefore, Respondent was charged with violating and was determined to have violated conduct rules §§ 3-501.15 (safekeeping property), 3-508.1 (bar admission and disciplinary matters), and 3-508.4 (misconduct).

## COUNT V

In July 2012, Respondent entered into legal services on behalf of Brian Rodwell to represent him regarding his child support. On July 25, Rodwell paid Respondent a $1,500 advance fee, against which Respondent agreed to bill Rodwell at an hourly rate. On July 26, Respondent had zero funds in his client trust account. On July 27, Respondent deposited Rodwell's advance fee payment into his trust account and immediately withdrew $1,000 of the funds. On July 30, Respondent withdrew Rodwell's remaining $500 from his trust account, leaving a zero balance.

Respondent filed a complaint to modify decree on behalf of Rodwell on May 23, 2013, but then failed to take further

action on behalf of Rodwell's case and failed to keep him informed of his case's status. On November 15, the district court issued a progression order stating that Rodwell's complaint to modify would be dismissed unless he failed to schedule a mediation. Respondent did not inform his client of this order, and no response to the district court was filed.

Therefore, Respondent was charged with violating and was determined to have violated conduct rules §§ 3-501.3 (diligence), 3-501.4 (communications), 3-501.15 (safekeeping property), and 3-508.4 (misconduct).

### PROCEEDINGS AGAINST RESPONDENT

On December 18, 2013, Respondent's license to practice law was suspended by the Nebraska Supreme Court. Respondent failed to notify either the district court or Rodwell of his suspension.

Formal charges were entered against Respondent on February 13, 2014. The process server has stated that after diligent search and inquiry, Respondent could not be found in Douglas County, Nebraska. The process server also stated that he verified the address with Respondent's apartment manager and that Respondent was avoiding service.

On May 7, 2014, we granted judgment on the pleadings and the facts were deemed established. On June 30, counsel appointed for Respondent in this matter resigned due to a failure by Respondent to communicate with counsel in any respect since the filing of formal charges. Respondent then failed to submit a brief, and thus waived his oral argument.

## STANDARD OF REVIEW

[1,2] A proceeding to discipline an attorney is a trial de novo on the record.[1] Failure to answer formal charges subjects a respondent to judgment on the formal charges filed.[2]

---

[1] *State ex rel. Counsel for Dis. v. Chapin*, 270 Neb. 56, 699 N.W.2d 359 (2005).

[2] *State ex rel. Counsel for Dis. v. Bouda*, 282 Neb. 902, 806 N.W.2d 879 (2011).

## ANALYSIS

An attorney is bound to the Nebraska Rules of Professional Conduct, under which an attorney must perform diligently and promptly in representing a client, communicate fully with a client, and properly administrate a client's funds in a separate trust account until the attorney has earned the fees he withdraws.[3] Further, a lawyer cannot withdraw from or terminate representation unless the lawyer takes steps to protect a client's interests, gives notice to the client, and surrenders papers and property to which the client is entitled.[4] Lawyers must respond to demands for information in disciplinary investigations and are prohibited from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.[5] Finally, a lawyer cannot engage in conduct that is prejudicial to the administration of justice, including failing to give the Counsel for Discipline access to the records of a trust account for auditing purposes.[6]

[3,4] The goal of attorney disciplinary proceedings is not as much punishment as determination of whether it is in the public interest to allow an attorney to keep practicing law.[7] We consider six factors in determining whether and to what extent discipline should be imposed: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.[8] Further, in determining the appropriate sanction, we consider the discipline imposed in similar

---

[3] See, § 3-501.3; § 3-501.4; § 3-501.15.

[4] § 3-501.16(c) and (d).

[5] See, § 3-508.1(a) and (b); § 3-508.4(a) and (c).

[6] See, § 3-508.4(d); Neb. Ct. R. § 3-906.

[7] See *State ex rel. Counsel for Dis. v. Orr*, 277 Neb. 102, 759 N.W.2d 702 (2009).

[8] *State ex rel. Counsel for Dis. v. Ellis*, 283 Neb. 329, 808 N.W.2d 634 (2012).

circumstances.[9] Cumulative acts of attorney misconduct are distinguishable from isolated incidents, therefore justifying more serious sanctions.[10] We have noted that "'a pattern of neglect reveals a particular need for a strong sanction to deter others from similar misconduct, to maintain the reputation of the bar as a whole, and to protect the public.'"[11]

[5] We have held that absent mitigating circumstances, disbarment is the appropriate discipline in cases of misappropriation or commingling of client funds.[12] In cases involving misappropriation and commingling of client funds, mitigating factors overcome the presumption of disbarment only if they are extraordinary.[13]

[6,7] Similarly, neglect of client cases and failure to cooperate with the Counsel for Discipline are grounds for disbarment.[14] We have stated that an attorney's failure to make timely responses to inquiries of the Counsel for Discipline violates ethical canons and disciplinary rules which prohibit conduct prejudicial to the administration of justice[15] and that an attorney's failure to respond to inquiries and requests for information from the office of the Counsel for Discipline is considered to be a grave matter and a threat to the credibility of attorney disciplinary proceedings.[16] Even worse, fabricating evidence with the intent to deceive the Counsel for Discipline interferes in a disciplinary investigation, which we have held merits a severe sanction.[17]

---

[9] *Id.*

[10] *Id.*

[11] *Id.* at 338, 808 N.W.2d at 642.

[12] *State ex rel. Counsel for Dis. v. Crawford*, 285 Neb. 321, 827 N.W.2d 214 (2013).

[13] *State ex rel. Counsel for Dis. v. Wintroub*, 267 Neb. 872, 678 N.W.2d 103 (2004).

[14] See *State ex rel. Counsel for Dis. v. Coe*, 271 Neb. 319, 710 N.W.2d 863 (2006).

[15] See *State ex rel. NSBA v. Simmons*, 259 Neb. 120, 608 N.W.2d 174 (2000).

[16] *State ex rel. Counsel for Dis. v. Crawford, supra* note 12.

[17] See *State ex rel. Counsel for Dis. v. Ellis, supra* note 8.

In *State ex rel. Counsel for Dis. v. Ellis*,[18] the respondent was facing sanctions for a failure to communicate with his clients. The respondent in *Ellis* claimed he had told the clients about an impending dismissal of their case. After an investigation of the respondent's computer, it was found that the respondent had fabricated the letter he alleged to have sent to his clients.[19] There, the respondent was disbarred from the practice of law in Nebraska. The court considered particularly that the respondent had been dishonest and had engaged in fraud, deceit, and misrepresentation.

As reiterated in the formal charges, Respondent did not communicate with his clients regarding their cases and did not properly appropriate his clients' trust fund accounts. He did not properly withdraw from representation of any of his clients and still maintains their files to this day. Correspondingly, Respondent prejudiced several of his clients' cases; in particular, he allowed Rodwell's case to be dismissed completely for failure to update the court. The Respondent has not cooperated with the Counsel for Discipline in its efforts to investigate his case, and in fact, Respondent is evading service from the Counsel for Discipline and this court. Respondent failed to provide records necessary to audit his client trust account. In the one instance when Respondent did reply to the Counsel for Discipline, he fabricated evidence of alleged communication with his clients. Thus, Respondent has engaged in dishonesty, fraud, deceit, and misrepresentation.

[8] Because Respondent has not given any sign of mitigating factors to the court, there are none to consider. However, it is considered an aggravating factor that he has exhibited a complete failure to regard the rules of professional conduct and abide by his oath as an attorney. In order to protect the public and to end Respondent's pattern of conduct, disbarment is the proper sanction.

Upon due consideration of the facts of this case, and based upon Respondent's cumulative acts of misconduct and

---

[18] *Id.*

[19] *Id.*

disrespect for this court's disciplinary jurisdiction, the court finds that the proper sanction is disbarment.

## CONCLUSION

It is the judgment of this court that Respondent should be and is hereby disbarred from the practice of law, effective immediately. Respondent is directed to pay costs and expenses, if any, in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012).

JUDGMENT OF DISBARMENT.

————————

State of Nebraska, appellee, v. Kerstin M. Piper, also known as Kerstin M. Clarkson, appellant.

___ N.W.2d ___

Filed October 31, 2014.    No. S-13-1029.

1. **Criminal Law: Courts: Appeal and Error.** In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.

2. **Courts: Appeal and Error.** Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.

3. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

4. **Appeal and Error.** An appellate court independently reviews questions of law in appeals from the county court.

5. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.

6. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.